J-A19005-14

2014 PA Super 227

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
HERBERT RANSON, :
:
Appellant : No. 1331 WDA 2013

Appeal from the Judgment of Sentence July 16, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016897-2012

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

OPINION BY OLSON, J.:                          **FILED OCTOBER 8, 2014**

Appellant, Herbert Ranson, appeals from the judgment of sentence of one to three years' imprisonment, imposed after he was convicted of receiving stolen property[1], person not to possess firearms[2], and firearms not to be carried without a license[3].   The sole issue on appeal is whether the trial court erred in denying Appellant's motion to suppress.   After careful consideration, we affirm.

Prior to trial, Appellant filed a motion to suppress evidence. Specifically, Appellant sought to suppress a firearm that was found on his

---

[1] 18 Pa.C.S.A. § 3925(a).

[2] 18 Pa.C.S.A. § 6105(a)(1).

[3] 18 Pa.C.S.A. § 6106(a)(1).

* Former Justice specially assigned to the Superior Court.

person following Appellant's stop and seizure by three police officers. A hearing was held on Appellant's pretrial suppression motion during which the following facts were adduced.

Detective Tanye Curry testified that he had been a police officer for 18 years and an officer for the City of Pittsburgh for approximately seven years. N.T., 5/16/13, at 3. On December 15, 2012, Detective Curry was working an approved off-duty detail for the City of Pittsburgh at the Serenity Club, an after-hours club located in Zone 5 of the City of Pittsburgh. *Id.* at 4-5. Detective Curry described the location of the club as a high-crime area. *Id.* at 5. According to Detective Curry, security was needed at the Serenity Club as there were prior incidents at the club, including fights, shootings and homicides. *Id.* at 5, 13. The patrons who went to the club included parole and probation violators. *Id.* at 13. Detective Curry worked the security detail at the Serenity Club for almost four years. *Id.* On the night in question, the club was letting out at approximately 3:30 a.m. *Id.* at 14. Detective Curry and two other officers assigned to the security detail stood in different areas around the perimeter of the club "to make sure nothing occur[ed]." *Id.* at 6. At that time, "a patron of the club stopped [Detective Curry] and told [him] there was a male on the corner with a firearm. The patron went on to give [Detective Curry] a description and said this person was wearing a black hoodie, black jeans, and had a long beard. The patron actually pointed the person out to [Detective Curry] on the corner." *Id.* Although Detective Curry did not know the informant's name, the Detective

- 2 -

saw him on a regular basis as the informant was at the club "every single weekend." *Id.* at 15. Appellant was the man to whom the informant pointed and, at the time he was pointed out to Detective Curry, Appellant was approximately 75 feet away from where Detective Curry stood. *Id.* at 7. Appellant was leaning against the corner of a building facing the front entrance of the club. *Id.* at 18. In light of this information, Detective Curry approached the other two officers and told him what the informant had said. *Id.* at 16. The three officers, all dressed in full uniform, began to approach Appellant from the side, at which time Appellant put his hands in his hoodie pocket and started to walk away. *Id.* at 9, 18-19, 20.[4] That is when Appellant was given the command to stop. *Id.* at 19. Although the officers were all yelling to Appellant to "stop", Appellant looked back at the officers and continued to walk away. *Id.* at 19-20. At that point, Detective Curry pulled his firearm out and held it at the side of his leg. *Id.* at 9.[5] Appellant

_____

[4] The record on this fact is contradictory. On direct examination, Detective Curry testified that as the officers first approached Appellant, "he was facing toward us. As we started walking toward him, getting closer to him, he turned and began to walk away from us." N.T., 5/16/13, at 9. It was on cross-examination that Detective Curry said that the officers approached Appellant from the side as he was staring at the club.

[5] The evidence is unclear as to whether the officers had their weapons pointed at Appellant. Detective Curry testified that he had his weapon un-holstered and out by his side but it was not pointed at Appellant. N.T., 5/16/13, at 24, 25. Detective Fred Wright, one of the other officers on duty that night, testified that he and Officer Kenny, the third officer, had their guns "drawn" as they approached Appellant. *Id.* at 28.

walked approximately 50 feet with the officers walking behind him telling him to stop. At this point, Appellant finally stopped and turned toward the officers. *Id.* at 21-22. Detective Curry ordered Appellant to remove his hands from the pocket of his hoodie sweatshirt at which time Detective Curry could see the imprint of a gun through the black sweatshirt. *Id.* at 22. Appellant was searched and an operational, .45 caliber Taurus firearm was found in the front pocket of his hoodie sweatshirt.

Following the hearing, the trial court denied the suppression motion. Appellant proceeded to a non-jury trial on July 16, 2013. At the conclusion of the trial, the trial court found him guilty of the above-referenced crimes. He was sentenced on that same day. Appellant filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its opinion in accordance with Pa.R.A.P. 1925(a).

Appellant presents the following question for our review:

> Did the trial court err in denying [Appellant's] motion to suppress where police lacked reasonable suspicion to believe [Appellant] was engaged in criminal conduct at the time that they stopped him?

Appellant's brief at 4.

Our standard of review in addressing a challenge to the denial of a suppression motion is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the

Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010), *cert. denied*, 131 S.Ct. 110 (U.S. 2010) (citations, quotations and ellipses omitted). Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. **See In re L.J.**, 79 A.3d 1073, 1083-1087 (Pa. 2013).

It is well-established that there are three categories of interaction between citizens and police officers. As our Supreme Court has clearly articulated:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Gutierrez**, 36 A.3d 1104, 1107 (Pa. Super. 2012), *appeal denied,* 48 A.3d 1247 (Pa. 2012), *quoting* **Commonwealth v. Ellis**, 662 A.2d 1043, 1047 (Pa. 1995) (citations omitted). Under the facts of this

case, we find that Appellant was subjected to an investigative detention at the time that the three officers commanded Appellant to stop. Our Supreme Court has held that where "a citizen approached by a police officer is ordered to stop … obviously a 'stop' occurs." ***Commonwealth v. Jones***, 378 A.2d 835, 839 (Pa. 1977). Moreover, as pursuit by police constitutes a seizure under the law of this Commonwealth, a person may be seized even though he is moving away from the police. ***See Commonwealth v. Matos***, 672 A.2d 769 (Pa. 1996). Thus, the issue is whether the officers possessed reasonable suspicion that Appellant was engaged in criminal conduct when they issued their command. We conclude that they did, therefore, Appellant's detention was lawful.

In denying the suppression motion, the trial court looked to this Court's decision in ***Commonwealth v. Foglia***, 979 A.2d 357 (Pa. Super. 2009) (*en banc*), *appeal denied,* 990 A.2d 727 (Pa. 2010) as guidance as to whether the investigative detention of Appellant was proper. In ***Foglia***, this Court set forth the standard that must be applied in determining whether an investigative detention of an individual is constitutionally sound:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the

- 6 -

circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 360 (citations and internal quotes omitted). In **Foglia**, two police officers in uniform were on patrol in a high-crime area of Philadelphia in a marked cruiser. The officers received a radio broadcast emanating from an anonymous source that there was a man standing on a specified corner dressed in black clothes who was carrying a firearm. In less than a minute and a half, the officers arrived at the designated corner and saw two males, one of whom was the appellant who was dressed entirely in black. In order to avoid detection, the officers entered the street with their headlights off. When the appellant and his companion saw the officers, they began to walk away from the cruiser. One of the officers watched the appellant who looked back several times but kept walking in the opposite direction. The officers stopped their vehicle and exited at which time the appellant grabbed around his waist area and sat on some steps behind two females. At that point, one of the officers ordered the appellant to stand, informed him that he was investigating a male with a gun that fit the appellant's description, and immediately patted the appellant down at which time he found a gun tucked into the appellant's waistband. The appellant was arrested for various gun offenses. The appellant filed a motion to suppress, asserting that the firearm was seized following an illegal police detention. The suppression court denied the motion and this Court affirmed the ruling. In considering

the totality of the circumstances, this Court noted that a seventeen-year veteran of the police force was patrolling in an area that had a high volume of drugs and weapons. This officer received an anonymous tip that a man dressed all in black was at a specified location and he possessed a gun. Upon immediately proceeding to that location, the officers saw two men, one of whom was dressed all in black. That man engaged in evasive behavior by continually looking back at police and walking away from them. He touched his waistband (where individuals frequently conceal weapons according to the officer). Based upon all of these circumstances considered in their totality, this Court determined that the investigative detention and subsequent pat-down of the appellant was constitutionally sound and, therefore, the suppression court acted properly in denying the appellant's suppression motion.

Similar to the facts in *Foglia*, Detective Curry's decision to approach and investigate Appellant was prompted by a tip. However, unlike the tip in *Foglia* which was received over the police radio and completely anonymous, Detective Curry received his information in person from an individual who frequented the Serenity Club on a weekly basis and whom Detective Curry saw regularly. We acknowledge that Detective Curry did not know the tipster's name; however, that fact does not make the tip purely anonymous and one that lacked any indicia of reliability.

"In analyzing an anonymous tip, we must determine whether under 'the totality of the circumstances' the informant's tip established the necessary reasonable suspicion that criminal activity was afoot." *Commonwealth v. Martin*, 705 A.2d 887, 892 (Pa. Super. 1997), *appeal denied*, 725 A.2d 1219 (Pa. 1998), *quoting* *Alabama v. White*, 496 U.S. 325 (1990). "[Both] quantity and quality of information are considered when assessing the totality of the circumstances. If information has a low degree of reliability, then more information is required to establish reasonable suspicion." *Commonwealth v. Wimbush*, 750 A.2d 807, 811 (Pa. 2000).

Appellant argues that the tipster in this case was purely anonymous and, therefore, his tip could not be used as a basis to establish reasonable suspicion. Appellant's brief at 14-17. In support of this argument, Appellant cites to several cases. However, the facts of the cases cited by Appellant are clearly distinguishable from the facts in the case *sub judice*. In *Commonwealth v. Hawkins*, 692 A.2d 1068 (Pa. 1997), the police received an anonymous telephone call that a black male wearing a blue cap, black jeans and a gold or brownish coat at a particular corner was carrying a gun. When the officer arrived at the location, he saw the appellant, and based solely on the tip and the fact that the appellant met the general description given by the tipster, the officer stopped and frisked the appellant at which time a gun was found in his waistband. In *Commonwealth v.*

*Jackson*, 698 A.2d 571 (Pa. 1997), a police officer received a police radio report of a man in a green jacket carrying a gun. Other than the jacket description and the man's location, no additional details were provided. The report was based on an anonymous telephone call. When the officer arrived at the location, he saw a number of individuals but only the appellant was wearing a green jacket. The officer exited his vehicle and immediately searched the appellant. During the search, no weapon was found, but a small box containing cocaine fell to the ground. Finally, in ***Commonwealth v. Hayward***, 756 A.2d 23 (Pa. Super. 2000), an officer was on foot patrol when an unidentified passerby told him that there was a group of six to eight males in the park and one of the males, who was "tall", was brandishing a gun. No other descriptive identification was given regarding the man who allegedly had the gun. The officer said that the passerby did not identify himself and the officer had never seen him before. It took the officer ten minutes to arrive at the park at which time he saw a group of individuals, including the appellant. The appellant was approximately 6'1" to 6'2" although there were a couple of other individuals in the group who were very close to the appellant's height. The group of individuals were ordered to line-up on the sidewalk at which time they were all frisked. The frisk yielded a gun tucked in the appellant's waistband.

In each of these cases, the searches were deemed unconstitutional because only general and vague tips were offered to establish reasonable

suspicion. In **Hawkins** and **Jackson**, the tips were from anonymous telephone callers and only broad, general descriptions of persons and locations were given. Although the tip in **Hayward** was made in person, it was a vague description of a "tall" male made by a person that the officer had never seen before. In this case, Detective Curry received his tip in person from an individual he saw on a regular basis and who went to the after-hours club weekly. The description of the person was not vague – in fact, the tipster not only described Appellant, he pointed him out to the detective. Taken together, the facts show that Detective Curry, a veteran officer, had an opportunity to assess: (1) the demeanor of the tipster; (2) the basis of the tipster's knowledge; and, (3) the tipster's present ability to perceive Appellant. These facts give additional credence to the tipster's information.

The facts of this case are more akin to the situation in **Commonwealth v. Williams**, 980 A.2d 667 (Pa. Super. 2009), *appeal denied*, 990 A.2d 730 (Pa. 2010). In **Williams**, Officer Sean McGinnis was on routine patrol when he received a radio call advising of a robbery in progress at a particular street corner. Arriving at the specified location, Officer McGinnis saw the appellant walking up the street with two female police officers walking behind him trying to catch up. Officer McGinnis also encountered "a Hispanic male pointing up to the [a]ppellant yelling, 'He's got a gun.'" *Id.* at 669. The appellant turned the corner at which time Officer

McGinnis pulled his patrol car about 15 feet in front of the appellant while the two female officers gave the appellant verbal commands to stop. The appellant initially complied with the verbal commands by placing his hands against an adjacent wall, but he then ran. Pursuing on foot, Officer McGinnis saw the appellant clutch the right side of his waist. Several blocks away, the appellant was blocked off by another patrol car at which time the appellant pulled a gun from his waistband and tossed it away. The suppression court denied the appellant's motion to suppress the gun and the appellant was convicted of various gun offenses. On appeal, the appellant argued that the stop was illegal as Officer McGinnis did not have the requisite level of suspicion needed to support an investigative detention. In affirming the suppression court's denial of suppression, this Court stated as follows:

> In order to justify an investigative detention, the police must have reasonable suspicion that criminal activity is afoot. Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based on the totality of circumstances viewed through the eyes of a trained police officer. Here, Officer McGinnis had just received a radio call advising of a robbery in progress, observed [a]ppellant in the immediate vicinity of the reported robbery attempting to avoid two female officers who were approaching him on foot, and encountered a witness who was pointing at [a]ppellant yelling, "He has got a gun."

> Appellant argues that the witness' statement, "He has got a gun" is the equivalent of an uncorroborated, anonymous tip, and is insufficient to establish reasonable suspicion justifying an investigative stop. We disagree. Each of the cases cited by [a]ppellant on this point involve anonymous phone calls to the police regarding criminal activity. **The situation here, however, is distinguishable in that**

> **the tip was made in person, giving Officer McGinnis an opportunity to observe the witness' demeanor and assess his credibility in light of his past experience with investigating crimes. Such a tip must be given more weight than a mere anonymous phone call** because a person who knowingly gives false information to any law enforcement officer with intent to implicate another may be held criminally liable.

*Id.* at 671-672. (emphasis supplied) (internal citations, quotation marks, ellipses and footnote omitted).

The tip in the case *sub judice* is even more reliable than the tip in **Williams**, which this Court deemed sufficient to support reasonable suspicion. In **Williams**, the only evidence was that an Hispanic male told Officer McGinnis that the appellant had a gun. There was no further description of the tipster or any indication that the officer had ever seen him before. In this case, however, Detective Curry testified that he had seen the tipster on a regular basis as he was a patron at the club every weekend. Like in **Williams**, Detective Curry had the opportunity to observe the tipster's demeanor and assess his credibility in light of his 18 years of experience as a police officer. Thus, the tip given to Detective Curry by a regular patron of the Serenity Club was a legitimate factor upon which the officer could rely in determining that there was reasonable suspicion to stop Appellant.

Moreover, there were additional facts that must be considered in viewing the totality of the circumstances from the eyes of the officers in this case. The Serenity Club was in Zone 5 of Pittsburgh – an area known as a

high-crime area.    More importantly, the club itself was known to be frequented by parole and probation violators and had been the site of prior fights, shootings and homicides.    Thus, there was a credible basis from which the officers could infer that the people in and near the club had weapons.    Detective Curry and the other officers were specifically assigned to the task of patrolling the area around the Serenity Club to make sure things remained calm and peaceful.    The events in this case happened at 3:30 a.m., when the after-hours club was closing and the people were leaving.    Additionally, as the officers in full uniform started to approach Appellant from the side (but before the commands to stop were issued), Appellant started to walk away.    It is reasonable to infer that Appellant saw the officers approaching and turned and walked away in an effort to evade them.    Although each of these factors, standing alone, may not be sufficient to establish reasonable suspicion, taken in their totality, they are sufficient to have reasonably led the officers to believe that criminal activity was afoot so as to justify the investigative detention of Appellant.    *See Foglia*, 979 A.2d at 361-362 (the anonymous tip, appellant's attire and location which matched the information provided by the anonymous tipster, the high-crime area, and appellant's evasive behavior of walking away from the police as they approached were sufficient to support an investigative detention and subsequent search); *see also Commonwealth v. Zhahir*, 751 A.2d 1153 (Pa. 2000) (an anonymous tip that a male wearing a green jacket and blue

jeans was selling narcotics at a specified street corner, appellant's attire and location matching the information provided by the anonymous tip, appellant's action of walking into a restaurant upon seeing the officers when officers arrived at the specified location two and one-half hours later, appellant's action of throwing something on the floor of the restaurant and then later retrieving it, and the fact that this occurred in a high-crime area were sufficient to support an investigative detention).[6]

Thus, in considering the totality of the facts and circumstances, and after applying our standard of review, we conclude that the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.

_____

[6] In denying the suppression motion, the trial court not only relied on the facts of the high-crime status of the neighborhood and the club, and Detective Curry's familiarity with the tipster, but it also relied on the evidence of Appellant's evasiveness in refusing to stop after being ordered to do so and "his unusual hand movements in refusing to remove his hand from his pocket where the gun could be seen, and then returning his hand to the pocket with the gun."  Trial Court Opinion, 1/14/14 at 3-4.  We do not believe that that evidence should have been considered in determining whether the officers had reasonable suspicion to detain Appellant.  As noted, *supra*, the officers effectively detained Appellant at the moment that they commanded him to stop.  Thus, only the factors apparent to the officers at that time can be considered in determining whether they had reasonable suspicion to believe that criminal activity was afoot.  As Appellant's action of continuing to walk away from the officers after being told to stop, and his hand movements with respect to the gun, occurred **after** Appellant was commanded to stop, that evidence cannot serve as a basis to support the denial of the suppression motion.  However, as there were sufficient factors to support an investigative detention at the time that Appellant was commanded to stop, it was harmless error on the part of the trial court to refer to those additional factors.

Justice Fitzgerald joins this Opinion.

President Judge Emeritus Bender files a Dissenting Opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2014