J-S14011-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAHEED HAYNES, | : | |
| | : | |
| Appellant | : | No. 47 EDA 2014 |

Appeal from the Judgment of Sentence November 25, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0007107-2012

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MARCH 24, 2015**

Shaheed Haynes ("Haynes") appeals from the judgment of sentence entered following his convictions of persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets of Philadelphia, and resisting arrest.[1]  On appeal, Haynes challenges only the trial court's denial of his motion to suppress.  For the following reasons, we affirm.

At approximately eleven in the morning on May 28, 2012, Officer William Yancer of the Philadelphia Police Department was on patrol in a marked police vehicle with his partner.  Officer Yancer was driving southbound in the 4500 block of Tackawanna Street when he observed Haynes and two other males walking northbound.  Haynes and his

---

[1] 18 Pa.C.S.A. §§ 6105, 6106, 6108, 5104.

companions were walking in the street as opposed to on the sidewalk.[2]

Haynes was walking with a bicycle while his two friends were just behind him. As Haynes drew near the police vehicle, he mounted the bicycle and began riding it. Officer Yancer noticed that the pockets of Haynes' shorts were weighed down with objects that Officer Haynes believed could be a firearm. Once Haynes passed the police vehicle, Officer Yancer opened the driver's door and looked back at Haynes. As he did so, Haynes suddenly sped away. Officer Yancer chased Haynes, calling out for him to stop as he did so. After approximately half of a block, Officer Yancer caught up to Haynes and grabbed him in order to make him stop. A struggle ensued, during which time Officer Yancer observed an ammunition magazine hanging out of Haynes' pocket. Officer Yancer recovered this magazine from Haynes and subsequently recovered a firearm from Haynes' other pocket. The firearm was not loaded but the magazine contained ten live rounds of ammunition.

Haynes was arrested and charged with the above-listed offenses. He filed a motion seeking to suppress the gun and the ammunition magazine, which the trial court denied after a hearing. Yancer elected to waive his right to a jury trial. Following a bench trial upon stipulated facts, the trial court found Haynes guilty of all offenses and sentenced him to a term of five

_____

[2] Tackawanna is a one-way street and on the day in question, cars were parked on both sides of the road.

to ten years of imprisonment.  Haynes filed a timely post-sentence motion, which the trial court denied.  This appeal followed.

As noted above, Haynes is challenging only the denial of his suppression motion.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

**_Commonwealth v. Ranson_**, 103 A.3d 73, 76 (Pa. Super. 2014).

Presently, Haynes takes issue with Officer Yancer's initial determination to stop him.  Our law recognizes three levels of police interaction with civilians.  "The first is a mere encounter, which requires no level of suspicion at all.  The second level is an investigative detention, which must be supported by reasonable suspicion.  Finally, the third level is

an arrest or custodial detention, which must be supported by probable cause." **Commonwealth v. Walls**, 53 A.3d 889, 892-93 (Pa. Super. 2012). Haynes argues that when Officer Haynes attempted to stop him, he did not have reasonable suspicion that criminal activity was afoot, and therefore, had no legitimate basis for a stop. Haynes' Brief at 9.

> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

**Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa. Super. 2014) (internal citations omitted). Furthermore, relevant to this appeal, unprovoked flight in a high-crime area from persons identifiable as police officers is sufficient to establish reasonable suspicion to support an investigatory detention. **Commonwealth v. Washington**, 51 A.3d 895, 898 (Pa. Super. 2012).

When initially denying Haynes' motion, the trial court stated that Haynes' unprovoked flight was the basis for its decision. N.T., 5/30/13, at 3. In its opinion issued pursuant to Pa.R.A.P. 1925(a), the trial court expanded its rationale for finding that Officer Yancer had reasonable suspicion to stop Haynes as follows:

Here, Officer Yancer stated a clear and articulate reason for his initial suspicion. He was patrolling in a high crime area and noticed an object that was consistent with [Haynes] having a firearm in his pocket. After [Haynes] passed him, Officer Yancer simply opened his door and looked to see if he could determine what the object was. At that point, the Officer had not stopped [Haynes] or made any attempt to pursue him. He was simply stopped in the street observing [Haynes] in a public area. [Haynes] immediately "fled" on his bicycle, at which point Officer Yancer had reasonable suspicion to pursue and detain [him]. Officer Yancer then detained [Haynes] and found the firearm and magazine clip on his person. Our Supreme Court has plainly stated that unprovoked flight in a high crime area is sufficient to give an officer reasonable suspicion for a *Terry* stop. That is exactly what happened here. Officer Yancer was in a high crime area and simply stopped and looked at [Haynes] who then fled. That is sufficient under Pennsylvania case law … ."

Trial Court Opinion, 4/15/14, at 4.

We can find no error in the trial court's ruling. The evidence of record supports the trial court's findings of fact. Officer Yancer testified that the block on which this incident occurred was in a high-crime area that was especially notorious for shootings. N.T., 5/16/13, at 9. When Officer Yancer observed Haynes' weighed-down pockets, he suspected, due to his experience as a police officer, that Haynes was in possession of a firearm. *Id.* at 8. Haynes was walking in the street; more specifically, in the area between the cars parked on the street and the police vehicle. *Id.* at 7. When Haynes walked past the police vehicle, he was within two feet of it.

*Id.* at 14, 16. Just as Haynes passed the police vehicle, Officer Yancer opened the door so that he could make a better determination of whether Haynes could be in possession of a firearm.[3] *Id.* at 6, 10. At that moment, Haynes fled. *Id.* at 6. As Officer Yancer chased, he ordered Haynes to stop but Haynes did not comply. *Id.* at 17, 20. Pursuant to *Washington*, Haynes' unprovoked flight in broad daylight from Officer Yancer, who was identifiable as a police officer, in a high-crime area was sufficient to establish reasonable suspicion so as to permit Officer Yancer to lawfully stop and frisk Haynes. *Washington*, 51 A.3d at 898. Accordingly, in light of our standard of review, we will not disturb the trial court's determination. *Ranson*, 103 A.3d at 76.

Haynes does not address this Court's holding in *Washington*. Instead, he points to testimony that he believes establishes that he was acting in a completely normal manner and argues that there is no basis for a finding that Officer Yancer had reasonable suspicion based thereon. Haynes' Brief at 11-14. This argument is essentially a challenge to the trial court's findings of fact. As stated above, we are bound by the trial court's findings of fact if they are supported by the record. *Ranson*, 103 A.3d at 76. We

---

[3] Officer Yancer was driving the police vehicle, which was a "wagon" that "sit[s] higher up." N.T., 5/16/13, at 16. Officer Yancer testified that because of the vehicle's construction, he had to open the door to see Haynes' shorts after Haynes passed. *Id.*

have determined that the trial court's findings of fact are supported by the evidence, and so we are bound by them.  Haynes' argument cannot succeed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015