J-S29016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MISTER MITCHELL | |
| Appellant | No. 1209 WDA 2014 |

Appeal from the Judgment of Sentence June 26, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000017-2014

BEFORE:  PANELLA, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JUNE 16, 2015**

Appellant, Mister Mitchell, appeals from the June 26, 2014 judgment of sentence of three years' probation imposed after the trial court found him guilty of carrying a firearm without a license.[1]  After careful review, we affirm.

The trial court summarized the factual background of this case as follows.

> [A]t approximately 10[:00] p.m. on December 16, 2013, four (4) Pittsburgh Police [d]etectives were patrolling in an unmarked police vehicle.  While stopped at a traffic light at the intersection of Homewood and Frankstown Avenues, they observed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6106(a)(1).

[Appellant] grabbing and adjusting the front of his waistband. When the officers pulled up to [Appellant], shined a flashlight on him and announced themselves as police officers, [Appellant] turned and ran. He was pursued on foot by Detectives [Mark] Goob and [Edward] Fall[ert] and the other two (2) officers followed in their vehicle. Throughout the chase, [Appellant] held his waistband. Eventually, Detective Goob observed [Appellant] pull a gun out of his pants, drop it and continue running. Appellant was eventually apprehended and was arrested.

Trial Court Opinion, 12/4/14, at 1-2.

On February 4, 2014, the Commonwealth filed an information charging Appellant with the aforementioned offense. Appellant filed a motion to suppress evidence on May 8, 2014, and the trial court held a hearing on the motion on June 26, 2014. At the conclusion of the suppression hearing, the trial court denied Appellant's suppression motion, and Appellant proceeded to a stipulated bench trial. N.T., 6/26/14, at 27. The Commonwealth presented a certificate of non-licensure form and a crime lab report indicating that the firearm recovered was in good operating condition. *Id.* at 29. The trial court found Appellant guilty of the charged offense and sentenced Appellant to three years' probation. *Id.* at 29-30. On July 25, 2014, Appellant filed a timely notice of appeal.[2]

On appeal, Appellant raises the following issue for our review.

_____

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

      I.    Did the trial court err in denying [Appellant's] motion to suppress where police subjected [Appellant] to an investigative detention without the requisite reasonable suspicion to believe criminal activity was afoot?

Appellant's Brief at 4.

When reviewing a challenge to a trial court's denial of a suppression motion, we adhere to the following well-established standard of review.

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

*Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

Appellant argues the trial court erred in denying his motion to suppress because police lacked reasonable suspicion that he was engaged in criminal activity. Appellant's Brief at 10. Therefore, "the seizure was illegal under both the Fourth Amendment to the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution." *Id.* Specifically, Appellant contends that he was seized "at the moment four detectives … pulled their police vehicle alongside [Appellant], shone a flashlight at him, and identified themselves as Pittsburgh Police[] …." Appellant's Brief at 12. For the following reasons, we disagree.

The Fourth Amendment of the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend IV. Similarly, the Pennsylvania Constitution assures citizens of our Commonwealth that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures…." Pa. Const. art. I, § 8. Further, "[t]he reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." *Commonwealth v. Fleet*, --- A.3d ---, 2015 WL 1845917, at *4 (Pa. Super. 2015) (citation omitted). Interactions between law enforcement and citizens fall into one of the following three categories.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* (citation omitted). When assessing whether an interaction escalates from a mere encounter to an investigative detention, we employ the following standard.

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States

> Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

**Commonwealth v. McAdoo**, 46, A.3d 781, 784 (Pa. Super. 2012) (citation omitted), *appeal denied*, 65 A.3d 413 (Pa. 2013). Moreover, when this Court evaluates whether an investigative detention is constitutional, the following principles guide our decision.

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

**Commonwealth v. Ranson**, 103 A.3d 73, 76 (Pa. Super. 2014), *citing* **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*), *appeal denied*, 990 A.2d 727 (Pa. 2010).

- 5 -

At the suppression hearing, Detective Goob testified as follows regarding his encounter with Appellant.

> [The Commonwealth]:
>
> Q. Could you explain the nature [of Appellant's arrest]?
>
> A. Yes. While working in that area -- which is a high crime area. It is known for a lot of guns and drug arrests in that vicinity -- while we were stopped at a traffic light on Homewood and Frankstown, I observed [Appellant], who is seated at the defense table …. He was standing on the corner.
>
> There were other people in the area. It was a fairly busy area. However[,] what drew my attention to [Appellant] was I noticed him making adjustments to the front right side of his waistband. …
>
> As the light changed, we crossed over Frankstown towards [Appellant]. As soon as we started to go through the light, [Appellant] who is standing on the corner and looking in our direction, he turned and started to walk up Homewood. As he started to walk up Homewood, we got through the intersection and pulled up beside him.
>
> As he was walking, we slowed our vehicle down to like the pace that he was walking and as we did this, Detective Fallert illuminated [Appellant] with his light and identified us as Pittsburgh Police.
>
> Immediately upon doing that[,] [Appellant] grabbed the front side of his waistband and started to run through the vacant lot to our right.

N.T., 6/26/14, at 3-5. Detective Fallert also testified for the Commonwealth at the suppression hearing and provided the following relevant testimony.

> [The Commonwealth]:

Q.    Could you describe the encounter?

[Detective Fallert]:

A.    Based on our observations, watching [Appellant], I believed he had a firearm in his waistband.  He was standing outside store at Homewood and Frankstown.  There were a few other individuals.  They were around the front at the bus stop and there were a couple people directly in the store.  A male had come out of the store [] at the same time [as] [Appellant].  Our light changed.  We were the second car in line.  We waited until the car in front of us turned left and we proceeded across the intersection and pulled up directly across from [Appellant] who seen [sic] us coming.

Q.    At that point what did you do?

A.    […] We drove across the street.  We drove up next to [Appellant].  I shined my light on him.  At that point[,] I said [“]Pittsburgh Police[”] and he immediately looked over, I mean real briefly, and turned to his right and took off running behind the convenience store.

*Id.* at 16-17.

The Commonwealth's evidence establishes that at the moment police first came into contact with Appellant, they identified themselves as law enforcement and shined a light on Appellant.  *Id.* at 11, 17.  The evidence also establishes that the police officers did not say anything else to Appellant, for instance, requesting identification or commanding Appellant to stop, before Appellant ran away from the police.  *See id.*  In viewing all surrounding circumstances, we conclude that when the police officers first came into contact with Appellant, the interaction was a mere encounter, and

a seizure of Appellant did not occur. *See McAdoo*; *supra*; *see e.g. Commonwealth v. Au*, 42 A.3d 1002, 1007-1009 (Pa. 2012) (holding, after discussion of federal and Pennsylvania case law, that "under Fourth Amendment law as reflected in the decisions of the United States Supreme Court, a request for identification is not to be regarded as escalatory in terms of the coercive aspects of a police-citizen encounter[]").

Following the initial encounter with police, Appellant "took off running," at which point he was pursued by the police officers. N.T., 6/26/14, at 17. Therefore, at this point, a seizure of Appellant occurred. *See Ranson*, *supra* at 77 (observing "pursuit by police constitutes a seizure under the law of this Commonwealth"). However, the record is clear that at the time police began pursuing Appellant, he was present in a high-crime area at approximately 10:00 p.m., and he was observed adjusting his waistband. N.T., 6/26/14, at 4-5. Additionally, when Detective Fallert illuminated his flashlight on Appellant and identified himself and his fellow officers as police, Appellant immediately "grabbed the front side of his waistband and started to run …." *Id.* Under the totality of the circumstances, giving due weight to the reasonable inferences drawn by Detectives Goob and Fallert in light of their experience,[3] we conclude they had reasonable suspicion to believe

_____

[3] Detective Goob testified he was employed by the Pittsburgh Police Department for 13 years and the area where he encountered Appellant was known for "a lot of guns and drug arrests[.]" N.T., 6/26/14, at 3. Detective
*(Footnote Continued Next Page)*

Appellant was engaged in criminal conduct.  *See Ranson, supra*; *see also In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001) (discussing the relevancy of flight in determining if reasonable suspicion exists and noting, "it is evident that unprovoked flight in a high crime area is sufficient to justify a *Terry*[4] stop under the Fourth Amendment[]"); *cf. Commonwealth v. Washington*, 51 A.3d 895, 898-899 (Pa. Super. 2012) (reviewing cases where the defendants "clearly … fled from individuals who were recognized as police" and concluding the "crucial element" when evaluating flight in a high crime area creating a nexus between running and criminal activity is that the defendant was "knowingly running from police[]").

Accordingly, we reject Appellant's argument that "the trial court erred in failing to suppress the firearm [he] [] discarded during the police chase." Appellant's Brief at 10.  The totality of the circumstances demonstrate that the police officers had reasonable suspicion to believe Appellant was engaged in criminal activity when they began their pursuit of Appellant, and we conclude the trial court did not err in denying Appellant's motion to suppress.  *See Ranson*, *supra*.  Therefore, we affirm the June 26, 2014 judgment of sentence.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Fallert testified he was employed with the Pittsburgh Police Department for 21 years, he had attended "an ATF course on characteristics of armed individuals[,]" and based on his observations of Appellant, he believed Appellant had a weapon." *Id.* at 16-17.

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2015