J-S67012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD ROMAN GARZA, | |
| Appellant | No. 661 MDA 2015 |

Appeal from the Judgment of Sentence March 11, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000460-2014

BEFORE: BOWES, PANELLA, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 19, 2016**

Edward Roman Garza appeals from his March 11, 2015 judgment of sentence of three to ten years imprisonment imposed after he was found guilty of two counts of possession with intent to deliver ("PWID") (heroin and cocaine). He challenges the trial court's denial of his motion to suppress evidence obtained as a result of a ***Terry*** frisk. We affirm.

The facts, as gleaned from the record, are summarized as follows.[1] At 11:30 p.m. on November 12, 2013, a white Ford Explorer was proceeding westbound on Route 30. It was the third of four vehicles traveling twenty

---

[1] The entire traffic stop was videotaped from a dashboard camera located on Trooper Long's cruiser that commenced recording when the vehicle's lights were activated. The trial court viewed the video prior to ruling on the suppression motion.

---

*   Retired Senior Judge assigned to the Superior Court.

miles in excess of the posted speed limit in front of a Pennsylvania State Police cruiser occupied by Trooper Nicholas Long and Trooper Jared Fluck. The Ford Explorer drew the troopers' particular attention when, in addition to speeding, it swerved several times over the fog line and center line and then made a right turn from a non-turning lane onto Route 896, both of which constitute violations of the Motor Vehicle Code. Having witnessed three Motor Vehicle Code violations, Trooper Long decided to pull over the vehicle.

Trooper Long approached the driver's side of the vehicle and Trooper Fluck stationed himself at the passenger side. Trooper Long smelled the scent of air fresheners as he neared the vehicle. The driver[2] was unable to provide a license, registration, or insurance card. However, he did comply with Trooper Long's request that he write down his identification. Trooper Long questioned the driver about where they had been. Appellant, the front seat passenger, responded that they were coming from the Tanger Outlets, a response that aroused the troopers' suspicion because the Outlets had been closed for two hours and the vehicle was traveling toward the Outlets rather than away from them.

Trooper Long was unable to locate information on the driver. Eventually, the driver admitted that he had provided a false name because his license was suspended. Appellant, together with his brother Michael

---

[2] The record does not contain the identity of the driver.

Garza, the rear-seat passenger, produced identification upon the troopers' request. After checking all three names, Trooper Long ascertained that the driver had three active traffic warrants; Appellant's brother had two. All three had criminal histories. Appellant had prior drug paraphernalia and theft charges and his brother had numerous charges, including PWID.

Based on the foregoing circumstances, Trooper Long asked the driver to step outside of the car and he questioned him again about where they had been. The driver advised that they were coming from Quarryville, which the trooper did not believe, since the vehicle had been proceeding westbound and Quarryville was located southwest of their location.

Trooper Jeffrey Swope arrived at the scene shortly after Trooper Long requested a K-9 dog for a vehicle sniff. Trooper Long asked the driver for permission to search the car and the driver consented. All three occupants were directed to exit the vehicle. Trooper Long testified that he normally would request permission to do a pat down for weapons and Trooper Swope confirmed that a pat down would increase the safety of the K-9 trooper that would have its back to the occupants during a sniff. When Appellant stood next to the guardrail, Trooper Swope observed a rectangular bulge in his pants near his groin that appeared to be the slide of a gun. Trooper Swope grabbed the bulge and immediately knew it was not a firearm but a package of many individual baggies, which contained drugs. He believed it was heroin. When he confronted Appellant with "This is heroin," Appellant

denied it and responded that the trooper was touching a particular part of his body. N.T. Suppression Hearing, 1/12/15, at 45. When the trooper insisted, Appellant admitted that it was heroin and a black plastic bag fell from his pants. It was later confirmed that the baggies contained heroin and cocaine.

Appellant conceded that the traffic stop was lawful, but filed a motion to suppress based on a lack of reasonable suspicion of a weapon to justify a pat-down search. A hearing was held on January 12 and 13, 2015. The trial court denied the motion and Appellant proceed to a non-jury trial that day. The court found him guilty of the aforementioned charges and sentenced him as aforesaid on March 11, 2015.

Appellant timely appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of issues complained of on appeal. On May 29, 2015, the trial court penned its Rule 1925(a) opinion, and this matter is ripe for disposition. Appellant's sole contention on appeal is that the trial court erred "in denying [his] motion to suppress when the police performed a weapons frisk on a passenger of a vehicle at the scene of a traffic stop pursuant to a standardized policy and not pursuant to reasonable suspicion based on particularized facts." Appellant's brief at 4.

In reviewing the denial of a suppression motion, our standard of review is limited to whether the record supports the trial court's factual findings and whether the legal conclusions are free from error.

- 4 -

*Commonwealth v. Ranson*, 103 A.3d 73, 76 (Pa.Super. 2014). In making that determination, we consider only the evidence of the party that prevailed before the suppression court, herein the Commonwealth, and so much of the evidence for the defense that remains uncontradicted when read in the context of the suppression record as a whole. *Id*. Where the suppression court's factual findings are supported by the record, we are bound by them. *Id*. If the alleged error involves a legal issue, the suppression court's legal conclusions are not binding on this Court, and we will determine whether the court properly applied the law to the facts.

The issue herein is whether the pat-down search for weapons was justified under the circumstances. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa.Super. 2011) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). Such pat-downs, which are permissible "without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons" that might present a danger to the

officer or those nearby.  ***Commonwealth v. Parker***, 957 A.2d 311, 315 (Pa.Super. 2008).  When an appellate court is examining the validity of a pat-down search, "we examine the totality of the circumstances . . . giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch."  ***Id***. (quoting ***Commonwealth v. Wilson***, 927 A.2d 279, 284 (Pa.Super. 2007)).

Preliminarily, Appellant argues that it was during the course of the unlawful frisk that Trooper Swope observed a rectangular bulge in Appellant's groin area and that the suppression court had no basis for its factual finding that the Trooper observed the suspicious bulge prior to the frisk.  The record refutes that contention.  Trooper Swope testified that, prior to patting down Appellant, he looked Appellant up and down to see if he noticed any bulges in his pockets.  He observed a rectangular bulge that looked like the slide of a gun toward the groin of his pant.  The trooper testified that he thought the bulge was a gun.  He immediately grabbed it and realized at once that it was not a gun, but individual baggies that he believed to be heroin.  When he confronted Appellant with his suspicions, Appellant initially denied the accusation and insisted that it was a part of his anatomy.

The suppression court specifically credited Trooper Swope's testimony that he looked Appellant up and down **prior to** patting him down and noted a rectangular bulge in his groin area beside his leg and extending to the groin, which he believed to be the slide of a firearm. Thus, the record supports the trial court's factual findings, and we are bound by them.

Appellant's primary contention is that the pat down for weapons violated his Fourth Amendment rights because the state troopers had no reasonable suspicion that he was armed and dangerous but conducted the weapons search pursuant to a standard policy. In support of that position, Appellant points to Trooper Swope's testimony that he always pats down a suspect when he removes him from the car prior to conducting a search. Appellant maintains that since the trooper intended to pat him down before he saw a suspicious bulge, the frisk was unjustified. We find no merit in this position.

"Reasonable suspicion to conduct a pat down search is based upon an objective standard, not subjective intent." ***Commonwealth v. Foglia***, 979 A.2d 357, 361 (Pa.Super. 2009). In ***Foglia***, we relied upon the United States Supreme Court's reasoning in ***Scott v. United States***, 436 U.S. 128, 138-39 n.13 (1978), that "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's action in light of the facts and circumstance confronting him at the time' and not the officer's actual state of mind at the time the challenged action was taken." The issue

is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Commonwealth v. Mack*, 953 A.2d 587 (Pa.Super. 2008).

This was a valid investigatory stop. In examining the totality of the circumstances, we note the following. It was late at night. The driver provided a false name to police and he and Appellant gave conflicting information regarding their whereabouts. All three men had criminal histories. Since the driver had consented to a search of the vehicle, either a trooper or a K-9 officer would have his back to the occupants while conducting the search. Most importantly, Trooper Swope observed what he believed to be the slide of a firearm in Appellant's groin area. *See Commonwealth v. Graham*, 721 A.2d 1075 (Pa. 1998) (early morning frisk for weapons justified where single police officer had to turn his back on two individuals to arrest a third for an outstanding warrant and officer observed a bulge in one of the individual's pockets consistent with a weapon); *see also Commonwealth v. Davis*, 102 A.3d 996 (Pa.Super. 2014) (holding reasonable a frisk of individual standing over unconscious victim where it was 2:00 a.m. in a high crime area and individual had a heavy object in his breast pocket). Since the trooper was able to articulate specific facts from which he reasonably believed that Appellant was armed and dangerous, the pat down for weapons to ensure officer safety was justified. *See Commonwealth v. E.M./Hall*, 735 A.2d 654 (Pa. 1999);

*Commonwealth v. Wilson*, 927 A.2d 279, 284 (Pa.Super. 2007).  No relief

is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/19/2016