J-S64019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARAY PELIER, | |
| Appellant | No. 284 MDA 2017 |

Appeal from the Judgment of Sentence December 19, 2016
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002461-2015

BEFORE:  PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 08, 2017**

Appellant, Jaray Pelier, appeals from the judgment of sentence entered on December 19, 2016, in the Lackawanna County Court of Common Pleas. We affirm.

The relevant facts of this matter were set forth by the trial court as follows:

> On November 5, 2015, Officers William Golden and James Sheerin of the Scranton Police Department were on patrol in North Scranton. (N.T.5/16/16 at pg. 37). The officers are part of the street crime unit, patrolling in an unmarked car and in plain clothing. *Id*[.] at 39. At approximately 2:00 p.m. they observed [Appellant] standing outside of a red Mercedes which was parked in the Sunoco parking lot in the 1700 block of North Main Avenue. *Id*[.] at 38. He was speaking to two males.[1] *Id*[.] Officer Golden observed the red Mercedes drive away and [Appellant]

---

[*] Former Justice specially assigned to the Superior Court.

walk back to his vehicle and get into the driver's seat. *Id*[.] at 40. The officers approached and parked their vehicle with Officer Golden exiting wearing a visible police vest. *Id*[.] at 41. He observed [Appellant] operating a Global Positioning System (GPS). *Id.* [Appellant] said "What's up?" *Id.* at 42. The Officer responded by asking if [Appellant] needed help. *Id.* [Appellant] said he did not need help, [and] he was heading back to Allentown where he lived. *Id.* The Officer asked [Appellant] if he lived in Allentown. *Id.* [Appellant] then said no, he lived in Scranton. *Id*[.] at 43. The Officer asked for identification. *Id*[.] [Appellant] asked if he could step out of his car. *Id.* The Officer agreed and [Appellant] exited his car with the Officer noticing [Appellant] beginning to act increasingly nervous. *Id*[.] at 44.

> [1] Notably, this neighborhood has been designated a high crime area by the Office of Economic Community Development ("OECD"). (N.T. 3/31/16 at pg. 6). This designation awards a grant to the City of Scranton to fund additional officers on patrol in this neighborhood. In addition, Officer Golden testified several other factors including [the] high number of drug related arrest[s], and the presence of Castle Night Club support his opinion that it is a high crime neighborhood. *Id*. at 6-9.

At this point, Officer Golden asked [Appellant] if he would consent to a search of his person for officer safety. *Id*[.] at 44. [Appellant] agreed. *Id.* While the Officer was patting [Appellant] down, he detected an odor of marijuana coming from [Appellant's] mid-section. *Id.*

Officer Golden asked [Appellant] if he could search his car. *Id*[.] at p. 45. [Appellant] declined stating it was not his car.[1] *Id.* The Officer observed that [Appellant] was operating the car with a single key. *Id.* Officer Golden testified that based on his training and experience, the fact that [Appellant] was operating

---

[1] The vehicle Appellant occupied was owned by Melinda Palermo-Albrittno. N.T., 3/31/16, at 20. Officer Golden testified that Ms. Palermo-Albrittno arrived at the scene and informed him that she had allowed Appellant to use the car and that she had not used the car in three months. ***Id.*** at 21.

a third party vehicle with a single ignition key heightened his suspicion that criminal activity was afoot. *Id.*

At around this time, Scranton Police Department K-9 officer Kyle Kemp responded to the scene. *Id.* at 44. His canine partner conducted an exterior canine sniff of the car and alerted for the presence of a controlled substance. *Id.* at 52. Officer Kemp then placed his canine partner in the interior of the vehicle [Appellant] had been driving, which also resulted in a positive alert. *Id.* After the canine sniff was positive, Officer Golden conducted an interior search of the vehicle. *Id*[.] at 53. He observed a jar of peanut butter on the back seat. *Id.* Next to it was a box of rubber gloves. *Id.* Officer Golden opened the lid of the jar of peanut butter and observed the contents of the jar had been manipulated. *Id*[.] at 54. The Officer proceeded to reach into the jar and retrieve packets of heroin. *Id*[.] at 24. The hatch of the car was searched next, resulting in the discovery of four (4) glassine baggies within a box of diapers. *Id.* Officer Golden then moved on to search the front console of the vehicle, which resulted in the discovery of one (1) bag of heroin packaged and ready for sale. *Id*[.] at 55. All recovered suspected heroin was field tested with positive results.[2] *Id.*

[Appellant] was then arrested and placed in the backseat of a patrol car. *Id*[.] at 56. [Appellant] was then advised of his Miranda Rights.[3] *Id.* Officer Golden testified that [Appellant] was also then advised that he was going to a secure facility, that the Officer had smelled marijuana during the consent search, and that [Appellant] would be charged with additional crimes if he brought contraband into the facility. *Id.* [Appellant] replied "Fuck you, I got nothing." *Id.* [Appellant] was then transported to Scranton Police Headquarters. *Id*[.] at 57.

Once at Scranton Police Headquarters, a strip search was attempted by Officer Golden but due to the uncooperative nature of [Appellant], more officers had to be called in. *Id*[.] at 57. Once officer's remove[d] [Appellant's] clothes, [Appellant] was

---

[2] The record reveals that in total, 151 baggies of heroin were recovered from the vehicle. Affidavit of Probable Cause, 11/6/15, at 2.

[3] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

instructed to turn and bend at the waist. *Id*[.] at 58. Officer Golden testified [Appellant] responded "Fuck you, suck my dick, you know you like it." *Id.* Once [Appellant] complie[d], it … revealed a quantity of marijuana concealed under his scrotum. *Id.* Officers ask[ed] [Appellant] to remove the bag of marijuana, to which [Appellant] responded with another slew of sexual and graphic statements to the officers. *Id.* Once Officer Golden remove[d] the bag, it [was] field tested and test[ed] positive for THC. *Id.*

Pa.R.A.P. 1925(a) Opinion, 4/20/17, at 2-5.

Appellant was charged with multiple crimes in connection with the heroin discovered in the vehicle and the marijuana discovered on his person. On May 16, 2016, following a jury trial, Appellant was convicted of one count of possession of a controlled substance with intent to deliver ("PWID"), one count of contraband, one count of possession of a controlled substance, two counts of possession of drug paraphernalia, and one count of possession of marijuana.[4]  On December 19, 2016, the trial court sentenced Appellant to an aggregate term of five to ten years of incarceration plus a sentence of two years and fifteen days of special probation to be served concurrently with the sentence of total confinement.

Appellant filed a timely post-sentence motion, and on January 10, 2017, the trial court denied Appellant's motion.  Appellant filed a timely

---

[4] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 5123(a); 35 P.S. § 780-113(a)(16); 35 P.S. § 780-113(a)(32); 35 P.S. § 780-113(a)(16); and 35 P.S. § 780-113(a)(31), respectively.

- 4 -

notice of appeal; both Appellant and trial court have complied with Pa.R.A.P. 1925.

In this appeal, Appellant presents the following issues for this Court's consideration:

1. Whether the verdicts and judgements of sentence at counts 1, (35 [P.S.] § 780-113(a)(30), possession with intent to deliver - heroin) and 3 (simple possession - 35 [P.S.] § 780-113(a)(16)), should be vacated because the evidence was insufficient to convict in that the narcotics were not found on [Appellant's] person and the Commonwealth failed to show sufficient evidence that [Appellant] constructively possessed the narcotics?

2. Whether the verdict and judgment of sentence at count two of the criminal information, 18 Pa.C.S.A. § 5123(a), should be vacated because the evidence was insufficient to establish that [Appellant] had the requisite mens rea to violate the statute in that he did not volitionally enter the police station in which marijuana was recovered from his person?

3. Whether the lower court erred in denying [Appellant's] motion to suppress physical evidence seized from his person and the vehicle he drove because, prior to the searches, he was detained in violation of his rights as embodied in Article 1 § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution in that his detention was premised upon a suspicion that he was violating travel restrictions imposed as a condition of probation or parole rather than upon a reasonable suspicion that he was engaged in criminal activity?

4. Whether the trial court erred in interpreting the term "prison" as used in 18 Pa.C.S.A. § 5123(a) in that the interpretation was not in the light most favorable to [Appellant] as mandated by 1 Pa.C.S.A § 1928(b)(1), and whether the trial court's interpretation of "prison", embodied in its jury instruction defining a "prison" as a "building where people are kept as punishment for a crime or while they are waiting to go to court _or_ a state or place of confinement", constitutes reversible error because the instruction failed to clearly, adequately, and accurately reflect the law and the error was not harmless?

- 5 -

Appellant's Brief at 5-6 (full capitalization omitted).[5]

In Appellant's first issue, he argues that the evidence was insufficient to convict him of PWID and simple possession of heroin because the narcotics were not found on his person, and the Commonwealth failed to prove constructive possession. We conclude that no relief is due.

We analyze challenges to the sufficiency of the evidence under the following standard:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

---

[5] We have renumbered Appellant's issues for purposes of our discussion. Because Appellant raises challenges to both the sufficiency of the evidence and to the ruling of the suppression court, we must address the sufficiency of the evidence first. *See Commonwealth v. Coleman*, 130 A.3d 38, 41 (Pa. Super. 2015) (stating that because a successful challenge to the sufficiency of the evidence warrants automatic discharge rather than retrial, we address that issue first).

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014)

(citation omitted).

The relevant elements of simple possession and PWID are as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(16), (30).

PWID can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of drug paraphernalia. *Commonwealth v. Bess*, 789 A.2d 757, 762 (Pa. Super. 2002) (citation omitted). Factors that may be relevant to establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

- 7 -

*Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) (*en banc*). Moreover, we have held that circumstantial evidence is reviewed by the same standard as direct evidence and that a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa. Super. 2003) (citations omitted).

As discussed above, the heroin seized in this matter was not recovered from Appellant's person; it was discovered in the car that Appellant was driving. However, it is well settled that when the illegal item a person is charged with possessing is not found on his person, the Commonwealth may establish the elements of the possessory offense through "constructive possession." *Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa. Super. 2016).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (internal citations and quotation marks omitted).

The evidence presented at trial established that Appellant was the sole occupant of the vehicle, Appellant was in the driver's seat and in control of

the vehicle, there was no drug-use paraphernalia, and 151 baggies of heroin were found in the car. N.T., 5/16/16, at 41-43, 55, 68-70. Moreover, it was likely that Appellant knew about the heroin in the car because his demeanor changed and he became agitated when Officer Golden began investigating Appellant's version of events. *Id.* at 43.[6] Appellant also attempted to distance himself from the vehicle when police approached, and he had conflicting versions of the reason he was in Scranton. *Id.* at 42. Detective Harold Zech testified as an expert that people who transport illegal drugs often do so in a third party's car in an effort to avoid any type of ownership should the drugs be discovered. *Id.* at 115. Additionally, Detective Zech testified as an expert that the quantity and packaging of the heroin was consistent with PWID. *Id.* at 116. When this evidence and the attendant circumstances are viewed in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient to prove that Appellant constructively possessed heroin and did so with the intent to deliver it. Accordingly, no relief is due.

_____

[6] *See Commonwealth v. Hughes*, 865 A.2d 761, 792 (Pa. 2004) ("The conduct of an accused following a crime, including 'manifestations of mental distress,' is admissible as tending to show guilt.").

In his second issue on appeal, Appellant argues that the evidence was insufficient to establish the crime of contraband. Appellant avers that he did not volitionally enter the police station and, therefore, the Commonwealth did not prove the requisite *mens rea*.

We reiterate that when reviewing the sufficiency of the evidence, we must determine whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. ***Trinidad***, 96 A.3d at 1038. The crime of contraband is defined, in relevant part, as follows:

> **(a) Controlled substance contraband to confined persons prohibited.**--A person commits a felony of the second degree if he … brings into any prison … any controlled substance included in Schedules I through V of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act,[1] (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution, specifying the quantity and quality of the substance which may be furnished to any convict, inmate, or employee in the prison or mental hospital, the name of the prisoner, inmate, or employee for whom, and the time when the same may be furnished, which permit shall be delivered to and kept by the warden or superintendent of the prison or mental hospital.
>
> [1] 35 P.S. § 780-101 *et seq*.

18 Pa.C.S. § 5123(a).

We first note that the crime of contraband does not contain a scienter or specific-intent element. However, as Appellant points out, the Crimes Code states:

> **(a) Minimum requirements of culpability**.--Except as provided in section 305 of this title (relating to limitations on scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

18 Pa.C.S. § 302(a).

Reading 18 Pa.C.S. § 5123(a) and 18 Pa.C.S. § 302(a) together, we are satisfied that the Commonwealth provided sufficient evidence that Appellant intentionally brought marijuana into the Scranton Police Headquarters. The record reveals that after Appellant was arrested, he was advised that he was going to a secure facility. N.T., 5/16/16, at 56. The officers informed Appellant that he would be charged with additional crimes if he brought contraband into the facility. *Id.* Appellant said that he had nothing on his person, and he entered the facility with marijuana secreted under his scrotum.

There is simply no scenario where we can conclude that Appellant unknowingly, accidentally, or inadvertently hid marijuana under his scrotum. Rather, when we view the evidence in the light most favorable to the Commonwealth, we find that Appellant entered Scranton Police Headquarters intentionally hiding marijuana on his person. Additionally, Appellant's argument that he did not intend to enter Police Headquarters because he was brought there against his will, Appellant's Brief at 27, is unavailing. It is axiomatic that individuals are most often taken into police custody against their will because few people desire to go to jail. However,

as noted, Appellant, of his own free will, chose to hide marijuana on his person. After his arrest, Appellant was informed that he would be entering a police facility and that possession of contraband would result in additional charges. Despite this explicit warning, Appellant elected not to inform the officers that he possessed marijuana, which was his right, but it resulted in him entering the facility with contraband by his own choosing. Appellant attempts to argue that he was forced into a position of incriminating himself if he had informed the officer that he possessed the marijuana. *Id.* Appellant misses the point. Had Appellant informed Officer Golden that he possessed marijuana, he may well have been charged with possession; however, by not informing Officer Golden, he entered the Scranton Police Headquarters committing the crimes of possession of marijuana **and** the additional crime of contraband. For these reasons, no relief is due.

In Appellant's third issue, he alleges that the trial court erred in denying his motion to suppress because Appellant's detention was based only on suspicion that he was violating the terms of his parole and not upon a reasonable suspicion that he was engaged in criminal activity. Appellant's Brief at 16. For the reasons that follow, we disagree.

We begin with our well-established standard of review for the denial of a suppression motion.

> In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the record. *Commonwealth v. Sanders*, 42

- 12 -

A.3d 325, 330 (Pa. Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. ***Id.***

***Commonwealth v. Haynes***, 116 A.3d 640, 644 (Pa. Super. 2015).

Additionally, this Court examines only the evidence offered at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1085-1087 (Pa. 2013).

Next, we note that there are three levels of interaction between police officers and citizens:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Ranson***, 103 A.3d 73, 77 (Pa. Super. 2014) (quoting

***Commonwealth v. Gutierrez***, 36 A.3d 1104, 1107 (Pa. Super. 2012)).

When Officer Golden first approached Appellant, the interaction was a mere encounter. However, as Officer Golden testified, a number of concerns increased his level of suspicion. We point out that the following factors impact an officer's reasonable suspicion that an individual is engaging in criminal conduct:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police

officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Freeman*, 150 A.3d 32, 36-37 (Pa. Super. 2016) (internal quotation marks and citation omitted).

The record reveals that a possible parole violation was not the only basis upon which Officer Golden based his suspicion of criminal activity. Rather, Officer Golden testified that when he approached Appellant's vehicle, Appellant asked to exit the car to speak with the officer. N.T., 3/31/16, at 13. At this point, Officer Golden asked whether Appellant was on probation or parole. *Id.* Appellant responded in the affirmative. *Id.* Officer Golden testified that he then wanted to contact the Pennsylvania Board of Probation and Parole ("State Parole") to find out who was supervising Appellant. *Id.* at 15. However, because Officer Golden knew that he would have to make a telephone call and take his focus off of Appellant, for his safety, he asked Appellant if he could search Appellant's person. *Id.* at 18. At this juncture, Appellant was not detained, and the interaction remained a mere encounter. *See Ranson*, 103 A.3d at 77 (a mere encounter need not be supported by any level of suspicion, but it carries no official compulsion to stop or to respond). However, Appellant agreed to the search, and it was during this

consensual search of Appellant's person that Officer Golden detected an odor of marijuana at Appellant's midsection. *Id.* This smell of marijuana was sufficient to establish reasonable suspicion that criminal activity was afoot. *See Commonwealth v. Smith*, 85 A.3d 530 (Pa. Super. 2014) (stating that the smell of marijuana emanating from the appellant's basement established reasonable suspicion to conduct a search for the marijuana). It was at this point that Officer Golden contacted State Parole. *Id.* at 18. Officer Golden testified that when he contacted State Parole, Appellant's demeanor changed. *Id.* Appellant became agitated and told Officer Golden he feared for his life. *Id.* While Officer Golden called State Parole, Appellant called 911, and Appellant remained on the phone until back-up officers arrived on the scene. *Id.* While Officer Golden was on the phone with State Parole, he learned that Appellant was not to be in Scranton as a condition of his parole. *Id.* at 16. When back-up officers arrived, based on the aforementioned reasonable suspicion, a canine conducted a sniff of the exterior of the vehicle. *Id.* at 19, 23. Upon sniffing the car, the canine alerted to the smell of a controlled substance. *Id.* This canine sniff provided probable cause to search the interior of the vehicle. *See Commonwealth v. Hernandez*, 935 A.2d 1275, 1285 (Pa. 2007) (stating that once a canine sniff of a vehicle's exterior triggers a positive indication, reasonable suspicion of contraband in the vehicle ripens into probable cause) (citing *Commonwealth v. Rogers*, 849 A.2d 1185, 1192 (Pa. 2004)).

Thus, when the officers searched the interior of the vehicle, they possessed probable cause. Accordingly, the search of the vehicle was lawful, the heroin recovered from the vehicle was properly seized, Appellant was legally arrested, and the search incident to Appellant's lawful arrest revealed the marijuana. Appellant is entitled to no relief.

In his final claim of error, Appellant avers that the trial court erred in defining "prison" in its jury instruction. Appellant asserts that this alleged error permitted the jury to improperly conclude that the term "prison," as used in 18 Pa.C.S. § 5123(a), could include the Scranton Police Headquarters. We conclude that Appellant is entitled to no relief on this claim of error.

> To determine whether a jury instruction faithfully characterized the statute upon which it is based, we first must determine the scope and meaning of the provision in question, thus furnishing a rubric for our inquiry. Statutory interpretation presents a question of law, which we resolve *de novo*. Once we have established the meaning and scope of the statute, we must determine whether the trial court, which enjoys broad discretion in fashioning its jury charge, clearly, adequately, and accurately related the law, so understood, to the jury. Only when the court commits an abuse of discretion or provides the jury with an inaccurate statement of law is there reversible error. Furthermore, even if an instruction is erroneous, relief is due only when the error is prejudicial.

***Commonwealth v. Veon***, 150 A.3d 435, 444 (Pa. 2016) (internal citations and quotation marks omitted).

As stated above, the crime of contraband is defined, in relevant part, as follows:

**(a) Controlled substance contraband to confined persons prohibited.**--A person commits a felony of the second degree if he … brings into any **prison** … any controlled substance included in Schedules I through V of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution, specifying the quantity and quality of the substance which may be furnished to any convict, inmate, or employee in the prison or mental hospital, the name of the prisoner, inmate, or employee for whom, and the time when the same may be furnished, which permit shall be delivered to and kept by the warden or superintendent of the prison or mental hospital.

18 Pa.C.S. § 5123(a) (internal footnote omitted) (emphasis added).

Pursuant to the statute, the Commonwealth must establish that Appellant brought contraband into a "prison." Appellant is correct in noting that Section 5123 does not define the term "prison."

The trial court addressed this issue as follows:

[Appellant] was charged with one count of Contraband/Controlled Substance in violation of 18 Pa.C.S.A § 5123(a). This count pertains to the small amount of marijuana discovered under [Appellant's] scrotum while he was being detained, post-arrest at the Scranton Police Headquarters. At the conclusion of the testimony at trial, [Appellant's counsel] objected to the proposed jury instruction which was read to the jury. (N.T. 5/16/2016 at p. 117-130). This Court overruled counsel's objection. *Id.*

The Pennsylvania Standard Jury Instruction for section 5123(a) reads in pertinent part:

The Defendant has been charged with providing contraband. To find the Defendant guilty of this offense, you must find that the following elements have been proven beyond a reason[able] doubt:

First, that the Defendant:

- 17 -

(b) brought into a prison a controlled substance so classified under Pennsylvania law. I instruct you that marijuana is a controlled substance; and

Second that the Defendant did so without a written permit signed by the physician of the prison.

Pa. Standard Jury Instruction 15.5123(a)

At trial, the defense argued that the holding cell at the Scranton Police Headquarters did not satisfy the definition of a prison as contemplated by the Pennsylvania legislature. *Id.* This Court researched this issue and included two definitions from Merriam Webster's Dictionary in the jury charge. The added language included:

"Prison" is defined by Merriam Webster's Dictionary as a building where people are kept as punishment for a crime, or while they are waiting to go to court or a place or state of confinement, especially for criminals.

(N.T. 5/16/2016 at p. 131, 179)

Thereafter, the jury returned a verdict of guilty on the one (1) count of possession of contraband, as well as the remaining charges. In order to assess the allegations of error, we must first look to the Pennsylvania Crimes Code itself. The Crimes Code provides, "The provisions of this title should be construed according to the fair import of their terms..." 18 Pa.C.S.A § 105. *See also* Commonwealth v. Williams, 525 Pa. 216, 220 (1990). In assessing the fair import of 18 Pa.C.S.A § 5123(a), the Supreme Court of Pennsylvania recognized "the fair import of the present statu[t]e is that there are certain places where it is impermissible to bring certain enumerated substances. These consist of any 1) prison..." *Williams* at p. 220. The Court in *Williams* stated "The Legislative purpose in enacting 18 Pa.C.S.A 5123(a) was obviously to prevent the acquisition of contraband substances by persons confined to prisons and mental hospitals." *Id*[.] at p. 220-221. Further, the Court in *Williams* rejected the notion that in order to be convicted of this offense, the actor must have had the intention of transferring it to other prisoners or inmates. *Id*[.] at p. 221.

- 18 -

Additionally, Section 5123(a) does not define the word "prison." As such, this Court is required to construe undefined words according to their "common and approved usage." 1[] Pa.C.S.A § 1921(a). The practice of utilizing "a dictionary to construe undefined words in a statue according to their common and approved usage" has been used by Pennsylvania courts in previous cases. Commonwealth v. Hood, 392 Pa.Super 388, 391 (Pa.Super. 1990). In the present case, the argument posed by defense counsel turned on the definition of the word "prison." This Court used the dictionary to determine the "common and approved usage" of that word.

As such, it is clear that the legislative purpose of Section 5123(a) was not compromised by the interpretation of the word "prison," thus the argument by [Appellant] is without merit.

Pa.R.A.P. 1925(a) Opinion, 4/20/17, at 7-9. We discern no error in the trial court's definition of prison.

As discussed above, it is undisputed that Section 5123 does not define prison, and the trial court utilized the dictionary to define prison for the jury as "a building where people are kept as punishment for a crime, or while they are waiting to go to court or a place or state of confinement." N.T., 5/16/16, at 179. We conclude that the trial court's definition was apt, and we find instructive the definition of prison found in the Pennsylvania Code concerning county jails:

Prison--A place, institution, building (or part thereof), set of buildings or area (whether or not enclosing a building or set of buildings) that is used for the lawful custody of individuals.

37 Pa. Code § 95.220a (Definitions). The definition provided by the trial court in this matter clearly, adequately, and accurately related the law to the jury. **Veon**, 150 A.3d at 444. Indeed, Appellant was in a place of

- 19 -

confinement and in lawful custody at the Scranton Police Headquarters, and it was at this location that he was discovered to be in possession of marijuana. After review, we conclude there was no abuse of discretion or error in the trial court's definition of prison in the jury charge.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Panella joins the Memorandum.

Justice Fitzgerald files a Concurring & Dissenting Statement.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017