J-A13010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN BURNETTE-MCCULLOUGH | : | |
| | : | |
| Appellant | : | No. 2064 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 26, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004701-2016

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 14, 2019**

Bryan Burnette-McCullough ("Appellant") appeals the June 26, 2018 judgment of sentence entered following his convictions at a bench trial of firearm and drug violations and conspiracy.  We affirm.

Prior to trial, Appellant filed a counseled motion to suppress evidence. Motion to Suppress, 11/21/16.  Following a hearing, the suppression court[1] denied Appellant's motion.  Order, 8/28/17.  Appellant filed a motion for reconsideration, which the suppression court granted.  Motion for Reconsideration, 4/27/17; Order, 8/28/17.  The suppression court had initially held that the traffic stop, which led to Appellant's arrest, was an investigatory

_____

[1] The Honorable Mary Alice Brennan served as judge for the suppression hearing and the trial.  We refer to the suppression court or trial court depending on the procedural posture of the case.

_____

*   Retired Senior Judge assigned to the Superior Court.

detention and that the police had reasonable suspicion to stop Appellant's vehicle. Order and Opinion, 8/28/17, at 3. The suppression court subsequently determined that the stop was a custodial detention and that the police had probable cause to stop Appellant's vehicle based on the following findings of fact:

> 1. Lieutenant Richard Gibney is employed by the Darby Borough Police as a Lieutenant in the anti-crime unit. He has been a police officer with Darby Borough since 1987. N.T. Suppression, 02/24/2017 p. 7.

> 2. The Anti-Crime Unit investigates major crimes in the Borough including homicide, robbery, rape, firearms and narcotics cases. When investigating narcotics cases Lieutenant Gibney has used [a] confidential informant[] ("CI") more than a hundred times. He has also on numerous occasions cooperated with the State Police and the DEA [Drug Enforcement Agency] in narcotics cases. N.T. Suppression 02/24/2017 p. 8.

> 3. In December of 2015, Lieutenant Gibney interviewed a CI who gave him "a ton" of detailed information about a group that was selling narcotics out of Southwest Philadelphia, Delaware County and Darby, in particular. The detailed information included what narcotics they were selling, general areas they were selling, their nicknames, their vehicles, and the block address of a house in Darby that [Appellant] was using as a stash house. N.T. Suppression 02/24/2017 p. 8, 9.

> 4. Based on this information, Lieutenant Gibney contacted the Philadelphia Police and spoke with Sergeant Mike Davis from the 12th District. Sergeant Davis investigates a lot of the narcotics cases in Southwest Philadelphia. He knew of the individuals identified by the CI. Sergeant Davis confirmed the information the CI gave to Lieutenant Gibney; "he confirmed it all". Lieutenant Gibney also contacted the DEA who had an ongoing investigation on some of the identified individuals. The DEA also confirmed the information given by the CI. At this point, the CI's information was confirmed and corroborated by two independent law enforcement agencies, both with ongoing investigations into this drug "organization" and active interest in

the information provided. In addition, the CI's reliable information resulted in at least two arrests for the Darby Police. [Lieutenant] Gibney also learned about additional drug locations in Darby that he did not know about previously. N.T. Suppression 02/24/2017 p. 9, 13, 19.

5.     One of the individuals the CI gave detailed information about is [Appellant], Bryan Burnett-McCullough. The CI told Lieutenant Gibney that [Appellant's] nickname on the street is "Beezy" and that he is selling heroin. The CI said that [Appellant] uses a house in Darby on the 1100 block of Chestnut Street as a **stash house** to keep his drugs. The [c]ourt takes judicial notice that stash houses are locations that drug sellers secure to store their illegal narcotics safely away from where they live and away from where they sell the drugs. This also helps the drug dealer from carrying larger quantities of drugs on him at any given time, so that if arrested, the amount will not trigger sentencing enhancements. N.T. Suppression 02/24/2017 p. 10.

6.     The CI told Lieutenant Gibney of [Appellant's] predictive behavior: that [Appellant] would arrive (at his stash house in Darby) in a white tinted out Maxima, run into the house to re-supply his drugs. The CI explained: "if we catch him running in and out of the house that's the time he would be going to re-up his drugs and he would be leaving with them." In addition, that [Appellant] "stays 1 to 5 minutes if he runs in and out that's when he is getting it." Also, that there is no set time, any time of the day or night, in and out to re-up his supply. N.T. Suppression 02/24/2017 p. 11, 56.

7.     Lieutenant Gibney confirmed the CI's knowledge of the drug world, including his knowledge of people involved in drug trafficking, and how drugs were used, packaged, and sold. Lieutenant Gibney found the CI's information to be reliable and made arrests with the help of the CI's information. N.T. Suppression 02/24/2017 p. 12, 13.

8.     The CI provided detailed information to Lieutenant Gibney pertaining to [Appellant's] car, a white tinted out Maxima. [Lieutenant] Gibney gave the information on [Appellant's] car to the night supervisor who found the vehicle and was able to obtain the registration. Lieutenant Gibney ran the tag and the vehicle came back as being registered to [Appellant] at a Philadelphia address (7328 Garman Street), which coincides with the

information from the CI that this is a stash house location. Lieutenant Gibney then obtained a picture of [Appellant]. Lieutenant Gibney showed the picture to the CI who confirmed [Appellant] as being the individual he knows as Beezy. N.T. Suppression 02/24/2017 p. 13, 14.

9. The Darby police, along with the DEA set up surveillance on the 1100 block of Chestnut Street as other investigations and resources allowed. Although [Appellant's] car was spotted on a number of occasions, in and out different times of the day and night, the officers were not there at the right time, right place until March 2. [N.T. Suppression 02/24/2017] p. 44.

10. On March 2, 2016[, Appellant] was observed parking his car on the 1100 block of Chestnut Street, got out of the car but left it running, looked around, and entered 1106 Chestnut Street. A few minutes later, [Appellant] exited the house, looked around, got back in his running car and quickly drove away. N.T. Suppression 02/24/2017 p. 17, 18.

11. [Appellant's] activity at the stash house was consistent with the predictive information Lieutenant Gibney received from the CI. [N.T. Suppression 02/24/2017 p. 17, 18].

12. In addition to providing information about [Appellant], the CI also provided Lieutenant Gibney information about other members of [Appellant's] criminal organization of drug dealers who combined money and resources to sell narcotics. The CI provided information on the group and an individual known as "Titty" whose real name is Rasheed Wood. Lieutenant Gibney was familiar with Wood from a prior drug arrest. The CI also identified individuals known as Cash and Cowboy. The CI also provided information about other locations the group operated from. Lieutenant Gibney confirmed all of the CI's information with the Philadelphia Police and the DEA. The DEA assisted in the investigation because they were aware of [Appellant's] activities and were independently investigating him. N.T. Suppression 02/24/2017 p. 19, 20, 26.

13. The CI was intimately familiar with [Appellant's] activities and routines because he had bought, sold and used drugs with [Appellant]. The CI had interactions with [Appellant] the week before his meeting with the Darby Police. Lieutenant Gibney found all of the CI's information to be accurate and

reliable; "right on the money". N.T. Suppression 02/24/2017 p. 21, 36, 54.

14. Lieutenant Gibney, after observing [Appellant's] activities at 1106 Chestnut Street, in light of the predictive behavior provided by the CI, and the totality of the investigation, radioed for [Appellant's] vehicle to be stopped. N.T. Suppression 02/24/2017 p. 22, 26.

15. Officer Daniel Falkenstein is employed by the Darby Borough Police Department since August 2011. N.T. Suppression 02/24/2017 p. 63.

16. On March 2, 2016[,] at approximately 5:34 p.m.[,] Officer Falkensten received a call from Lieutenant Gibney to stop a white Nissan Maxima that was the subject of a narcotics investigation. Based on that information, Officer Falkenstein conducted a traffic stop on [Appellant's] vehicle just past Ridge Avenue on MacDade Boulevard. N.T. Suppression 02/24/2017 p. 64.

17. Officer Falkenstein made contact with [Appellant] who was the driver and the sole occupant of the vehicle. Officer Falkenstein requested [Appellant's] license and registration and advised him he was being stopped as part of a narcotics investigation. N.T. Suppression 2/24/2017 p. 64, 64.

18. [Appellant] immediately acted very nervous. Officer Falkenstein became concerned [that Appellant] may be armed and removed him from the vehicle to conduct a pat down search. As [Appellant] was standing next to Officer Falkenstein, he smelled an odor of burnt marijuana. N.T. Suppression 02/24/2017 p. 66.

19. [Appellant] was wearing a green coat. Inside the left jacket pocket was located a partially smoked marijuana cigarette. [Appellant] was then taken into custody and later transported to the police station. N.T. Suppression 02/24/2017 p. 67, 68.

20. [Appellant] was searched incident to his arrest at the police station. Found in his left sock were four small yellow plastic baggies containing a white chalky substance consistent with crack cocaine packaged for sale. Further search located seven individual blue wax baggies containing a brown powdery substance consistent with heroin packaged for sale in his underwear, 21

smaller yellow plastic bags containing the same white chalky substance as the initial four bags and a single pill that was later identified as Oxycodone. [Appellant] also was in possession of $41 in his right breast pocket and $390 in a pant pocket. N.T. Suppression 02/24/2017 p. 70, 71.

21. After [Appellant] was arrested, 1106 Chestnut Street was secured so no evidence could be destroyed while a search warrant was obtained. N.T. Suppression 02/24/2017 p. 56.

22. Lieutenant Gibney obtained a search warrant for 1106 Chestnut Street. During the search of that residence a quantity of narcotics, a .45 caliber Taurus semi auto[matic] handgun with 10 live rounds, paraphernalia and business cards with "Beezy" and [Appellant's] phone number on them. All items seized are listed in the inventory which was admitted into evidence along with the search warrant. N.T. Suppression 02/24/2017 p. 83.

Suppression Court Order and Opinion, 8/28/17, at 1–8 (internal brackets omitted; emphasis in original). Accordingly, the suppression court vacated its first order denying suppression and then denied the motion to suppress a second time. *Id.* at 13.

Following Appellant's convictions, the trial court sentenced him to incarceration for an aggregate term of five to ten years. Sentencing Order, 6/26/18. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

A. Did the [t]rial [c]ourt commit an error of law when it failed to grant Appellant's Motion to Suppress, where the officers lacked reasonable suspicion or probable cause to stop the vehicle he was traveling in thus violating his constitutional rights?

B. Did the trial court commit an error of law by failing to grant Appellant's Motion to Suppress, where the evidence used to

support a finding of reasonable suspicion carried a low degree of reliability?

C. Did the trial court commit an error of law by failing to grant Appellant's Motion to Suppress where the information provided to law enforcement was stale at the time of the seizure of Appellant?

Appellant's Brief at 4.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–1048 (Pa. Super. 2012) (*en banc*); Pa.R.Crim.P. 581(H).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted . . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. *Commonwealth v. Williams*, 2008 PA Super 6, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted).

*Commonwealth v. Williams*, 176 A.3d 298, 315 (Pa. Super. 2018). Moreover, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35–36 (Pa. Super. 2016); *In re L.J.*, 79 A.3d 1073, 1083–1087 (Pa. 2013).

Appellant first argues that the traffic stop was not supported by "reasonable suspicion to believe that he was engaged in criminal activity or probable cause to believe that a crime had been committed." Appellant's Brief at 12. Appellant complains that:

> [t]he only information that was present at the time of the stop was that [Lieutenant] Gibney wanted the vehicle stopped for a drug investigation despite not having [had] any contact with the [CI] or anyone who knew [Appellant] in two months. . . . It is clear that [Officer Falkenstein] did not have any information at his disposal to support the traffic stop.

*Id.* at 15–16.[2]

The Commonwealth responds:

> The vehicle stop was an investigative detention . . . . It was a stop to investigate [Appellant's] involvement in drug activity that turned into a custodial detention once the officer smelled marijuana.
>
> ***
>
> [Officer Falkenstein] stopped the vehicle as a result of a "narcotics investigation." Tr. 2/24/17, 63; *see also* Tr. 2/24/17, 65 ("an investigation of drug complaints"). Lieutenant Gibney never told Officer Falkenstein to "arrest" [Appellant]; instead he "called for [Appellant] to get stopped." *Id.* at 19; see also *Id.* at 20, 49, 50, 64, 65, [71–74], 76, 77 (Lieutenant Gibney only instructed him to "stop" [Appellant], not arrest him.). The officer stopped the vehicle to investigate whether the driver was using it as part of a drug trafficking operation.

---

[2] Within Appellant's first issue, he challenges Officer Falkenstein's frisk pursuant to **Terry v. Ohio**, 392 U.S. 1 (1968), and the search of Appellant's coat pocket as illegal. Appellant's Brief at 17–22. These two claims are waived because Appellant did not include them in his Pa.R.A.P. 1925(b) statement. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."); Rule 1925(b) Statement, 8/14/18.

Commonwealth's Brief at 11, 13.

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). There are three levels of interaction between police officers and citizens:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ranson*, 103 A.3d 73, 77 (Pa. Super. 2014) (quoting *Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012)). The following factors impact an officer's reasonable suspicion that an individual is engaging in criminal conduct:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather,

even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Freeman***, 150 A.3d 32, 36–37 (Pa. Super. 2016) (quoting ***Commonwealth v. Rogers***, 849 A.2d 1185, 1189 (Pa. 2004) (internal quotation marks and citation omitted)).

Morever:

for a stop to be valid, someone in the police department must possess sufficient information to give rise to reasonable suspicion. The officer with the reasonable suspicion, usually the dispatcher, need not convey all of this background information to the officer who actually effectuates the stop. Thus, the police may justify the search by presenting sufficient evidence at the suppression hearing that someone in the chain of command had reasonable suspicion before the stop, even if the arresting officer did not.

***Commonwealth v. Walls***, 206 A.3d 537, 542 (Pa. Super. 2019) (quoting ***Commonwealth v. Barber***, 889 A.2d 587, 594 (Pa. Super. 2005)).

Here, after reconsideration, the suppression court "concede[d] the stop of [Appellant's] vehicle constituted a custodial detention." Suppression Court Opinion, 7/28/17, at 13. According to the suppression court:

[The] combination of information from a known reliable source with first[-]hand knowledge, extensive corroboration and their own observations provided ample reason for police to suspect criminal conduct was afoot and to stop [Appellant's] vehicle. We find [Lt.] Gibney had probable cause to stop [Appellant's] vehicle.

***Id.*** at 16.

Upon review, we find support in the record for the suppression court's findings of fact. N.T. Suppression, 2/24/17, at 6–78. However, we affirm on a different legal basis because the suppression court used the reasonable-

- 10 -

suspicion standard ("criminal conduct was afoot") to reach its conclusion that the police had probable cause to stop Appellant's vehicle. Based on the totality of the circumstances, we agree with the Commonwealth that the vehicle stop was an investigatory detention supported by reasonable suspicion. While our basis for upholding the legality of the stop may be different than that of the trial court, we emphasize "an appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." **Commonwealth v. Diaz**, 183 A.3d 417, 421 (Pa. Super. 2018).

Information provided by the CI before March 2, 2016, which Lieutenant ("Lt.") Gibney confirmed with the Philadelphia police and DEA, provided Lt. Gibney with reason to suspect that Appellant was engaged in a drug-trafficking operation. Police surveillance of Appellant's vehicle in the 1100 block of Chestnut Street for several months and Appellant's activity at the stash house on March 2, 2016, provided Lt. Gibney with reason to suspect that criminal activity was afoot. Armed with specific and articulable facts regarding Appellant's involvement in a drug operation, the make and model of his vehicle, the location of his stash house, and his conduct on March 2, 2016, Lt. Gibney directed Officer Falkenstein to stop Appellant's vehicle. Officer Falkenstein conducted the vehicle stop to further Lt. Gibney's investigation into Appellant's drug activity. N.T., 2/24/17, at 59–62. Officer Falkenstein's vehicle stop did not involve "such coercive conditions as to constitute the functional equivalent of an arrest." **Ransom**, 103 A.3d at 77; **Gutierrez**, 36

A.3d at 1107. We conclude that Officer Falkenstein had reasonable suspicion to stop Appellant's vehicle in furtherance of Lt. Gibney's investigation.[3]

Next, Appellant argues that the suppression court erred in denying him relief "because the information used to establish reasonable suspicion and probable cause carried a low degree of reliability." Appellant's Brief at 23. Specifically, Appellant complains that the CI's information did not disclose objective facts, it was not corroborated by independent police work over the course of three months, and it did not pertain to the inner workings of Appellant's alleged operation. *Id.* at 23, 25, and 30. In support of his argument, Appellant relies on **Commonwealth v. Wilson**, 622 A.2d 293 (Pa. Super. 1993).[4] Appellant's Brief at 30. Notably, Appellant does not clarify the context of his challenge, *i.e.*, the vehicle stop or the search of his stash house.

---

[3] Officer Falkenstein did not arrest Appellant until the officer noticed an odor of burnt marijuana "coming from [Appellant's] person." N.T., 2/24/17, at 62, 63. Officer Falkenstein testified that Appellant was the sole occupant of the vehicle. *Id.* at 61. He also testified as to his training and experience identifying the odor of burnt marijuana, which he described as "distinct, pungent." *Id.* at 62–63.

The suppression court found, and the record confirms, that, based on the officer's observations, he had probable cause to arrest Appellant and search him. Suppression Court Opinion, 8/28/17, at 16–17; N.T., 2/24/17, at 61–63. Appellant acknowledges that he was "constitutionally seized once the vehicle was stopped." Appellant's Brief at 14.

[4] **Wilson** is not applicable. Therein, the Court had:

> no insight as to the "basis" of the confidential informant's "knowledge" with regard to the information recited to the police.

- 12 -

The Commonwealth counters that the CI's information was reliable because the CI was an identified source, Lt. Gibney confirmed the CI's information about Appellant's drug activity with the Philadelphia police and the DEA, and the CI accurately predicted Appellant's behavior with regard to the stash house. Commonwealth's Brief at 14, 16–17. The Commonwealth also submits that "the CI advised the police that he (the CI) bought drugs from [Appellant]. The CI identified a photo of [Appellant]. And the CI's information resulted in at least two other arrests for the Darby Police." **Id.** at 17 (citing Findings of Fact 3–6).

"A determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." **Commonwealth v. Luv**, 735 A.2d 87, 90 (Pa. 1999). "An informant's tip

---

This does not mean that this aspect of the "reasonable suspicion" criteria cannot be satisfied by the detailed nature of the tip. However, we find that the color and type of vehicle driven by the defendant were facts not restricted to those in the defendant's inner circle of friends. It would have been information accessible to the public and general acquaintances of the accused.

**Wilson**, 622 A.2d 293, 296 (1993).

In contrast, the CI in this case provided Lt. Gibney with information about more than Appellant's vehicle; he described Appellant's involvement in a drug organization, Appellant's behavior at the stash house, and his personal drug dealings with Appellant. N.T. Suppression, 2/24/17, at 6–78. The suppression court addressed the CI's reliability in its opinion. Suppression Court Opinion, 8/28/17, at 14–15.

- 13 -

may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." ***Commonwealth v. Goldsborough***, 31 A.3d 299 306 (Pa. Super. 2011) (quoting ***Luv***, 735 A.2d at 90).

We have determined that Officer Falkenstein had reasonable suspicion to stop Appellant's vehicle in furtherance of Lt. Gibney's drug investigation. Additionally, Officer Falkenstein had probable cause to arrest Appellant based on his observation that Appellant smelled of burnt marijuana. Thus, we need not examine whether the CI's information provided probable cause to stop or to arrest Appellant.

Lastly,[5] Appellant argues that the CI's information "was stale at the time of the police actions." Appellant's Brief at 35. According to Appellant, the CI's last contact with Appellant was a week before the CI spoke with Lt. Gibney; three months later, Lt. Gibney directed the traffic stop without having received any additional information about Appellant from the CI or other sources. ***Id.*** at 36. Appellant asserts that "a three-month period is clearly insufficient to establish probable cause" for issuance of the search warrant for 1106 Chestnut

---

[5] Within Appellant's last issue, he challenges the initial warrantless entry of 1106 Chestnut Street. Appellant's Brief at 37–45. This issue is waived because Appellant did not include it in his Rule 1925(b) statement. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."); Rule 1925(b) Statement, 8/14/18.

- 14 -

Street. *Id.* at 37 (citing *Commonwealth v. Novak*, 335 A.2d 773, 776 (Pa. Super. 1975) (evidence of drug sales occurring seven weeks before arrest was insufficient to establish probable cause for issuance of arrest warrant)).

The Commonwealth responds: "The four corners of the affidavit contained reliable information from a CI that [Appellant] was selling drugs and a lawful search of [Appellant's] person confirmed the CI's tip." Commonwealth's Brief at 21. Specifically, the Commonwealth explains that the lawful stop of Appellant's vehicle resulted in the lawful arrest of Appellant; upon searching Appellant incident to arrest, the police recovered:

> ample evidence further corroborating the tip from the CI that [Appellant] was drug dealer and using the house at 1106 Chestnut Street as a stash house: 21 bags of crack cocaine, one Oxycodone pill, four separate bags of crack cocaine in his sock, seven bags of heroin in his underwear, $41.00 in his right breast pocket, and $390.00 in his right pant pocket. [N.T.,] 2/24/17, 70–71.

*Id.* at 23. According to the Commonwealth, the CI's information was not stale because the contraband recovered from Appellant's person demonstrated "that the criminal activity continued up to the date of the issuance of the warrant[.]" *Id.* at 25 (citing *Novak*, 335 A.2d at 775).

A search warrant must be supported by probable cause. U.S. Cont. amend. IV; Pa.Const. Art. I, § 8. "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted."

***Commonwealth v. Jones***, 988 A.2d 649, 655 (Pa. 2010) (quoting ***Commonwealth v. Thomas***, 292 A.2d 352, 357 (Pa. 1972)).

"In ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the 'totality of the circumstances' test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause." ***Jones***, 988 A.2d at 655. The Pennsylvania Supreme Court adopted this test for purposes of making and reviewing probable cause determinations under Article I, Section 8. ***Commonwealth v. Gray***, 503 A.2d 921 (Pa. 1986). The Pennsylvania Supreme Court has described this test as follows:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in ***Gates***, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place .... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
>
> * * *
>
> Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Jones*, 988 A.2d at 655 (quoting *Commonwealth v. Torres*, 764 A.2d 532, 537–538, 540 (Pa. 2001) (internal brackets omitted)).

Regarding staleness, we have explained that the "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *Commonwealth v. Hoppert*, 39 A.3d 358, 363 (Pa. Super. 2012). "If too old, the information is stale, and probable cause may no longer exist." *Id.* However, staleness is not determined by age alone, as this would be inconsistent with a totality of the circumstances analysis. *Id.*

> If the officer is presented with evidence of criminal activity at some prior time, it must also be shown that the criminal activity continued up to or about the time the warrant is issued, in order to support a finding of probable cause. There is no hard and fast rule regarding what constitutes stale information; such determinations must be made on a case-by-case basis. The applicable standard for determining the time limits to be placed on search warrants is one of reasonableness.

*Commonwealth v. Vergotz*, 616 A.2d 1379, 1382 (Pa. Super. 1992) (internal citations omitted).

In denying Appellant's challenge to the search warrant, the suppression court opined that:

> [t]he narcotics found on [Appellant] during his search incident to arrest totally validated the CI's information. [Lt.] Gibney then used the information he obtained from the CI, the results of his own investigation, and [Appellant's] fresh arrest for drug possession to establish probable cause to obtain a search warrant for 1106 Chestnut Street. This [c]ourt determines that the Search Warrant in question was issued upon a proper determination of probable cause by the issuing Magisterial District Justice.

Suppression Court Opinion, 8/28/17, at 17.

Upon review, we conclude that the suppression court's factual findings are supported by the record and the legal conclusions drawn from those facts are correct. The affidavit in the instant case, when read in the light of common sense and the totality of the circumstances, supports the finding that probable cause existed for a search Appellant's stash house. In the affidavit, Lt. Gibney detailed information provided by the CI about Appellant selling heroin in the Darby, Southwest Philadelphia, and West Philadelphia areas, using a stash house in the 1100 block of Chestnut Street in Darby to "re-up" his supply, and driving a "tinted out white Maxima." Affidavit of Probable Cause, Commonwealth Exhibit 11, at 2. Lt. Gibney explained his confirmation of the CI's information, the CI's identification of Appellant from a photograph, police surveillance of the 1100 block of Chestnut Street, and police observation of Appellant entering the stash house on March 2, 2016, in a manner the CI predicted. *Id.* Lt. Gibney also indicated that the CI had used, sold, and packaged drugs in the past. *Id.* The affidavit also describes the contraband recovered during Appellant's arrest and search, which demonstrates the continuing nature of Appellant's criminal activity. *Id.* at 3.

The ongoing investigations, the CI's information, Appellant's conduct on March 2, 2016, and the recovered contraband were facts and circumstances within Lt. Gibney's knowledge "and of which he ha[d] reasonably trustworthy information[;]" thus, they were "sufficient in themselves to warrant a man of

reasonable caution in the belief that a search should be conducted." ***Jones***,

988 A.2d at 655.  Appellant's final claim does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/19